## KNOX ET AL. v. REESIDE.

July 2, 1836.

*Motion for judgment for want of a sufficient affidavit of defence.*

The incapacity to contract of one party to a bill of exchange, does not diminish the responsibility of other competent parties to each other. Thus where a draft is made by a contractor with the United States to carry the mail, on the postmaster-general, which is accepted, but protested for non payment, the drawer is liable to the holder.

A conditional or restricted acceptance of a bill by the drawee, does not destroy the liability of the drawer to the holder, if it be drawn as payable absolutely, and in money.

The direction of the drawer to the drawee to charge the bill to a particular account between them, or to a particular fund, does not vitiate the bill as regards the liability of the drawer to the holder.

Thus, where, upon protest for non payment of a draft made by a mail contractor on the postmaster-general, payable on the 1st day of January 1836, in the body of which is, " and charge the same to my account for transporting the United States mail," and which is accepted, " provided the drawer should perform his contract," a suit is brought by the holder against the drawer, the plaintiff is entitled to recover.

The court will render judgment, under the act of the 28th of March 1835, for want of an *affidavit* of defence, although the defendant should in due time file an *affidavit* which contains the allegation of *facts* upon which the plaintiff would be entitled to recover, although the defendant should aver in his *affidavit*, that upon such facts, the law is with him, and he *bona fide* believes they constitute a legal and valid defence.

**A SUMMONS** was issued in this case, returnable on the first Monday of May 1836. On the 9th of May the plaintiff filed a paper, of which the following is a transcript.

"$5000.                              *Washington,* 18*th April* 1835.

"Sir—On the 1st day of January 1836 pay to my order 5000 dol-

[Knox et al. v. Reeside.]

lars for value received, and charge the same to my account for transporting the United States mail, and oblige your friend,

"JAMES REESIDE.

"To Hon. WILLIAM T. BARRY, Postmaster-General.

"Accepted, provided the drawer should perform his contract.

"R. C. MASON, Treasurer."

Indorsed, "JAMES REESIDE, ABRAM HORBACK, D. B. M'NAIR."

A copy of the protest of this bill for non payment was also filed at the same time by the plaintiff.

May 11th, 1836, the defendant filed the following *affidavit* of defence under the act of the 28th of March 1835, viz. :

"James Reeside, the defendant in this case, on oath declares, that he has a just defence against the whole of said plaintiff's demand, which is founded, as appears by the copy of the instrument filed by the plaintiff, on the deponent's draft on the postmaster-general of the United States; chargeable, as the said draft declares, to the drawer's account for transporting the United States mail. Deponent was a contractor with the postmaster-general for transporting the mail, and, as he believed, justly entitled to draw the said draft against the amount due to him on the said account, as was then usual under such contracts. The draft was accordingly drawn the 18th day of April 1835, payable the 1st day of January 1836, and accepted by a written acceptance on the face thereof by the treasurer of the general postoffice department, *provided the drawer should perform his contract*, which proviso or condition was part of the acceptance. Thus accepted, it was indorsed by this deponent to Abram Horback, who was concerned with deponent in transporting the mail, and who had full knowledge of all the circumstances connected with the contract, the drawing of the said draft, and with the conditional acceptance thereof on the face as aforesaid. Before the said draft fell due, the postmaster-general suspended payments to the deponent, on the plea, as he understands, of his non compliance with his contract, so that not only has payment of the said draft been refused according to the acceptance, but no money, credit or allowance whatever has been paid, made or credited to this deponent by the postmaster-general; and moreover this defendant's instances for settlement of his accounts with the postmaster-general have been refused, and a large sum due to the defendant for transporting the mail is withheld from him by the postmaster-general, far beyond the amount of the draft in question. Of said refusal to pay the draft deponent apprised

[Knox et al. v. Reeside.]

Abram Horback long before it was due, and he also gave general notice of these circumstances to the Western Bank of Philadelphia, in which bank the said draft was deposited for collection. Whether it was transferred to the plaintiffs for a valuable consideration this deponent is not informed, but he has reason to believe that they hold it as agents for either Abram Horback or his immediate indorser. Deponent is moreover advised, that besides the defence, the nature and character of which are before stated, he has other grounds of legal exoneration, arising out of the incapacity of the postmaster-general to give such acceptance, and the instrument in question not being negotiable, or a bill of exchange."

May 21st, 1836, the plaintiff moved the court to enter judgment for want of a sufficient *affidavit* of defence, which the court declined, but granted a rule *nisi* on the defendant, returnable on the next Saturday. On the hearing of the rule,

*Meredith*, for plaintiff, contended, that the defendant's *affidavit* was insufficient. Admitting the facts therein detailed, the plaintiff is legally entitled to judgment on them in his favour. The instrument on which suit is brought is a *bill of exchange*, and the defendant is liable.

*C. J. Ingersoll*, for defendant.

Every *affidavit* of defence is sufficient, if it contain the defendant's averment of facts, which he honestly believes to constitute a good defence. He must not be deprived of the right of trial by jury. This action is brought on a negotiable instrument as such. It is not so; it is payable out of a particular fund which may never be in existence, and it is accepted upon a condition which may never be performed. The indorsee took it with notice of these contingencies, neither of which having occurred, he cannot look to the defendant beyond his contract. Again, not being a negotiable instrument, *per se*, the right of the plaintiff was a mere *chose in action*, and the suit should have been brought *to the use* of the plaintiff. *Chit. on Bills* 831, *8th ed.*, 1833 ; *Ibid.* 157 ; Boas *v.* Nagle, 3 *Serg. & Rawle* 253 ; United States *v.* Robinson, 9 *Peters's Rep.* 319. And the *affidavit* exhibits defences in fact.

*Meredith*, in reply.

The act of the 28th of March 1835 intended that *the Court* should

[Knox et al. v. Reeside.]

render judgment whenever the parties could not gainsay such facts as upon their own showing entitled the plaintiff to it. The intervention of a jury is necessary only in case of disputed facts. No party shall be allowed to swear to what he believes to be the law. This is a negotiable instrument. It is not payable *out of* a particular fund, but the drawer simply directs the drawee to charge the bill to a particular account. Nor does the *conditional* acceptance govern or control the relation of liability from the drawer to the holder. It is not therefore a right on which an action is to be brought *to the use*. And if it be not a negotiable instrument, it would be the mere assignment of a debt due the defendant from the United States; and against the latter (if it were not impossible on other grounds), could a right be urged in that form? *Chitty on Bills, and cases therein cited.*

The opinion of the Court was delivered by

STROUD, J.—The defendant concludes his *affidavit* with a suggestion that the instrument on which his action is founded is *not* a bill of exchange, or negotiable, and this broad position has been taken in argument by his counsel. This objection is radical, and if sound, it would be the duty of the court to give it effect, whether noticed in the *affidavit* or not. Being an *opinion* and not a *fact*, it was not necessary that the defendant should swear to it, and he has very properly omitted to do so.

It is said this is not a bill of exchange or negotiable, because the drawee was an officer of the government, and *as such* has no authority to contract, and having been drawn upon him in his *official* character, his acceptance did not affect him *personally*. It is unnecessary to controvert these reasons. But the incapacity to contract of one party to a bill, does not in the slightest degree diminish the responsibility of other competent parties to each other. *Chitty on Bills* 32. It is true, as a general proposition, if a married woman without the assent of her husband indorse a bill, as her acts are *void* in law, a holder of the bill subsequent to her could not sue a *prior* party, *because* the *title of the former must be derived through her*; but her immediate indorsee would be responsible to a more remote party to the bill. Haly *v.* Lane, 2 *Atk.* 181.

It was urged, in the second place, that the *conditional acceptance* of the bill destroyed its negotiable character. This objection was not well considered.

I.—2 N

[Knox et al. v. Reeside.]

But the strength of the objection as to the character of the instrument was concentrated on this proposition ; that the bill conclu les "*and charge the same to my account for transporting the United States mail :*" and that the acceptance is special—"*accepted provided the drawer should perform his contract.*" Connecting the direction of the drawer with the restricted acceptance, it is argued that the bill was drawn on a *particular fund.*

It is a mistake to regard the *acceptance* of a bill as entering into the character of the instrument itself ; this is to be determined from its original formation, as it comes from the hands of the drawer. If on its face at that time it falls within the description of a bill of exchange, no form of acceptance can change its legal effect. Thus it is an essential requisite of a bill of exchange, that it be payable *absolutely* ; yet a *conditional acceptance* is common, and strictly mercantile. It must also be payable *in money*, yet it may be *accepted* payable *in bills.* The instrument in question being then, on its face, a bill of exchange, its restricted *acceptance* is wholly unimportant.

The effect of the direction of the drawer to the drawee, *to charge the amount when paid to the drawer's account for transporting the United States mail,* stands alone then, as an objection to the negotiable character of the instrument. This objection is equally unavailing. Bills may be drawn, and so are the most ancient forms, with directions "put it to *my* account," or "to *your* account," or "to the account of *A B*," or "as *per advice*," &c. See *Chitty on Bills* 105. Macleod *v.* Snee, 2 *Strange* 742, 2 *Lord Raym.* 1481, was a much stronger case for doubt than the present. There a bill dated May 25th, drawn at one month after date, to pay to the plaintiff's order 9 pounds 10 shillings, "as my quarterly pay, to be due from the 24th of June to the 27th of September next, by advance," was held good. *Chitty*, in introducing this case, gives the true rule on this subject. "The statement of a particular fund in a bill of exchange, will not vitiate it, if it be inserted merely as direction to the drawer how to reimburse himself." And see Haussouillier *v.* Hartrink, 7 *D. & E.* 733 ; Sanders *v.* Bacon, 8 *Johns.* 485.

As to another point made by the defendant's counsel, *that the affidavit* which has been filed satisfies the requisitions of the act of assembly, it is enough to remark, that inasmuch as an *indorsement,* to say nothing of the drawing of the instrument, is *prima facie* evidence of being made for full value, (Riddle *v.* Mandeville, 5 *Cranch*

[Knox et al. v. Reeside.]

322,) and as this presumption is not repelled in the *affidavit*, *Horback* himself, were he the plaintiff, could recover.     And in regard to the actual plaintiff, giving to the very *surmises* of the defendant the validity of *facts*, no defence has been sworn to.

The plaintiff is therefore entitled to judgment agreeably to the act of assembly.

Rule absolute.